IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| BRENDA J. HUGHES, | ) | CASE NO.1:19-CV-00174 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |
| Defendant. | | |

## **Introduction**

Before me by referral[1] is an action by Brenda Hughes pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision of the Commissioner of Social Security that denied Hughes' application for Disability Insurance Benefits and Supplemental Security Income.[2] Under terms of my initial orders[3] the Commissioner has filed an answer[4] and a transcript of the administrative proceedings, the parties have briefed

---

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Benita Y. Pearson in a non-document order entered on January 23, 2019.
[2] ECF No. 1.
[3] ECF Nos. 6, 11.
[4] ECF No. 9.

their arguments[5] and filed supporting material,[6] and the parties have participated in a telephonic oral argument.[7] For the reasons that follow I will recommend finding that substantial evidence does not support the decision of the Commissioner and so that decision should be reversed and the matter remanded for further proceedings.

## **Facts**

*Background*

The essential facts are not complex. Brenda Hughes, who was born in 1956, applied for benefits in 2015 after an MRI conducted following a fall in September of 2015 revealed that she a multiple disc issues in her back, as well as finding that she had a right kidney tumor.[8] In addition, in October 2015 she was determined to be suffering from moderate depression.[9]

A partial nephrectomy of her right kidney was performed in December of 2015.[10] By March of 2016, she started pain management for her back issues and was also found to have degenerative changes to her left hip, which was subsequently observed in December 2016 to cause problem with her balance.[11]

---

[5] ECF Nos. 12 (Hughes), 15 (Commissioner), 16 (Hughes reply).
[6] ECF No. 15, Attachment (Commissioner fact chart).
[7] ECF No. 19.
[8] ECF No. 12 at 1 (citing record).
[9] *Id*. at 2 (citing record).
[10] *Id*. (citing record).
[11] *Id*. (citing record).

In January 2017 she began treatment with physicians at the Institute for the Spine, where she reported increased lower back pain over the preceding year that was only temporarily relieved by pain injections.[12] Another MRI in February 2017 found disc herniation and a disc tear.[13] Treatment notes from the rest of 2017 show Hughes continuing to complain of lower back pain and record that by July 11, 2017 she would experience pain after sitting or driving for less than 10 minutes, could only carry light items without pain and experienced pain walking up and down stairs.[14]

On July 13, 2017, Hughes' treating physician, Dr. Gwen Haas,[15] prepared a treating source statement.[16] In it, Dr. Haas opined that Hughes' symptoms had stabilized but were disabling.[17] Specifically, Dr. Haas stated that Hughes had severe lower back and buttocks pain such that she had difficulty with mobility and with remaining seated.[18] To that point, Dr. Haas further stated that Hughes would be able to sit for 10 minutes at a time, stand for 15 minutes at a time, and would be unable to either sit or stand for two hours in a workday.[19] Dr. Haas concluded that with her condition Hughes would be off-task for more than 25 percent of a workday and be absent four or more days per month.[20]

---

[12] *Id*. (citing record).
[13] *Id*. (citing record).
[14] *Id*. at 2-3 (citing record).
[15] Dr. Haas had been treating Hughes since 2012. *Id*. at 12 (citing record).
[16] *Id*. at 3 (citing record).
[17] *Id*. (citing record).
[18] *Id*. (citing record).
[19] *Id*. (citing record).
[20] *Id*. (citing record).

In support of those opinions Dr. Haas prepared a second report on the same day, listing clinical factors such as positive supine straight leg raising test, positive seated straight leg raising test, abnormal gait, loss of motor control, muscle atrophy and muscle weakness.[21] Office notes were cited showing that Hughes changed positions frequently during her office visit from standing, to sitting, to lying down.[22]

During the remainder of 2017 Hughes received nerve root injections for pain in August and September.[23] At an office visit in December, Hughes reported pain in her left hip and noted that she was still receiving injections for pain and was taking tramadol.[24]

*ALJ decision*

The ALJ in this case found that Hughes had the following severe impairments: degenerative disc disease of the lumbarsacral spine; status post partial nephrectomy for right renal neoplasm without metastasis; and mild degenerative changes of the left hip.[25] He determined that Hughes had the residual functional capacity for light work, with some modifications regarding climbing, balancing, stooping, crouching and crawling, and with no exposure to hazards such as heights, dangerous machinery and commercial driving.[26]

---

[21] *Id.* (citing record).
[22] *Id.* (citing record).
[23] *Id.* (citing record).
[24] *Id.* (citing record).
[25] Tr. at 17.
[26] *Id.* at 20.

In formulating that RFC the ALJ concluded that Hughes' complaints about pain were not substantiated by objective medical evidence.[27] He also gave "no weight" at all to any of the specific functional limitations set out by Dr. Haas, the treating physician.[28] The ALJ stated that Dr. Haas's report was not supported by her own treatment record or those of other treatment sources, and that Dr. Haas's findings were "at odds with the claimant's testimony."[29] To that point, the ALJ first contrasted Dr. Haas's statement that Hughes must use a walker with Hughes's testimony that she sometimes uses a cane, while not mentioning a walker.[30] He then stated that although Dr. Haas claimed that clinical evidence supported the functional conclusions as to abnormal gait, muscle atrophy, and inability to sit or stand for more than 10 minutes, "records from the claimant's office visits with Dr. Haas contain no documentation of such findings, aside from some degree of loss of range of motion."[31]

But while totally dismissing the July 2017 findings of Dr. Haas, the ALJ gave great weight to functional opinions from state agency reviewers given more than a year earlier in February and March of 2016.[32] Those RFC conclusions were that Hughes had a capacity for light work with some limitations.[33] The ALJ determined that this RFC was "generally

---

[27] *Id.*
[28] *Id.* at 24.
[29] *Id.*
[30] *Id.*
[31] *Id.* at 24-25.
[32] *Id.* at 25.
[33] *Id.*

supported by and consistent with the claimant's medical records."[34] But, in consideration of Hughes's testimony about pain, the ALJ added additional RFC limitations regarding balancing, kneeling and crouching to those set forth by the state agency reviewers.[35]

The ALJ concluded his RFC analysis by noting that although the disc disease and degenerative changes in the hip do cause significant pain, they are treatable with injections and medication, and are not so severe as to require surgery.[36] Consistent with the comments concerning Dr. Hass's opinion, the ALJ further noted here that "there have not been findings of severe loss of strength or range of motion" that would justify a more restrictive RFC.[37]

*Present issue*

Framed as two arguments, Hughes essentially claims that the RFC is not supported by substantial evidence because the ALJ erred in giving Dr. Haas's functional opinion no weight and because the ALJ did not properly credit Hughes' complaints of pain.[38] Because Dr. Haas's opinion does address functional limitations from pain, the weight given to that opinion is the primary question.

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] ECF No. 12 at 2.

## Analysis

Before proceeding further, I make the following observations. First, I note initially that the substantial evidence standard of review is well-established, wide known and not contested here.

I note further that the law is well-settled as to when the opinion of a treating source may be discounted. To that end, if the ALJ declines to give controlling weight to the opinion of a treating source, the ALJ must provide good reasons for the weight that is assigned.[39] Good reasons are reasons supported by the evidence and sufficiently specific to make it clear to subsequent reviewers the weight that was actually given and the reasons for that weight.[40]

Here, the analysis of the weight given to Dr. Haas's opinion has to start with the fact that the ALJ assigned absolutely no weight to the opinion of a doctor that had been treating Hughes for multiple years and who had prepared both a functional opinion and a supporting medical source statement. A conclusion that there is absolutely zero value – none whatsoever - in the multi-page opinion from a physician with a long treatment relationship is itself remarkable.

Moreover, it is also a fact that this opinion from a long-time treating source was totally set aside while the ALJ relied upon opinions from two sources who never examined Hughes and arrived at their conclusions more than a year before Dr. Haas gave her opinion,

---

[39] *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).
[40] *Blakely v. Comm'r of Social Security*, 581 F.3d 399, 406-07 (6th Cir. 2009).

and so did so without seeing Dr. Haas' opinion or any treatment notes from 2017. While it is possible for an ALJ to give greater weight to non-examining sources that have not reviewed the complete record over treating sources, in such situations the ALJ must be careful to indicate on the record that he has taken that fact into consideration or else the ALJ's decision cannot stand.[41]

In this case, in the single paragraph dealing with the weight given to the opinions of the state agency reviewers, the ALJ does not discuss the fact that those opinions were arrived at without consideration of nearly a year of medical records. Thus, there is no reasoned explanation why these opinions remain valid despite their failure to consider the complete record. Indeed, and in a jarring sentence, the ALJ actually made the boilerplate statement that these state agency reviewer opinions were "generally supported by and consistent with the claimant's medical records"[42] even though the opinions were formulated without any consideration for nearly a year of those records.

In addition to this defect, which *Blakely* finds to be fatal, substantial evidence does not exist to support the finding that Dr. Haas's opinion has zero weight. Even giving due credit to the observations by the ALJ, many of the stated reasons for discrediting Dr. Haas do not rise to the level of good reasons.

For example, the very first stated reason - that Dr. Haas claimed Hughes must use a walker while Hughes "contradicted" that by only claiming to sometimes use a cane – is

---

[41] *Id*. at 409.
[42] *Id*. at 25.

semantic nitpicking. Hughes stated in her 2015 function report that she uses a walker[43]and

testified at the 2018 hearing that she uses a walker or a cane.[44] Dr. Haas makes specific

reference to mobility problems[45] and to difficulty ambulating.[46]

Moreover, as Hughes notes, the evidence for such limitations is not only the disc

degeneration, herniation and narrowing,[47] which are noted by Dr. Haas and the ALJ,[48] but

severe - 9/10 – lower back pain radiating to the left leg, which was noted multiple times by

Dr. Haas. For example, Dr. Haas included in the July 2017 opinion the direct observation

that this pain was constant, recorded in her own personal clinical observation that "even

during [2017] exam room evaluation [Hughes] needs frequent re-positioning."[49] Indeed,

the ALJ himself notes that Hughes has "significant enough pain that [Hughes] has sought

treatment, with some success, but [still has] continuing pain that fluctuates in severity."[50]

I also here note that Hughes did not even begin specific treatment for pain until

March 8, 2016[51] – which was after the first state agency reviewer had rendered an opinion

(February 11, 2016) and barely two months before the second state agency opinion (May

13, 2016).[52] Thus the full disabling effects of her pain, if any, could not have been

---

[43] *Id*. at 231.
[44] *Id*. at 45.
[45] *Id*. at 345.
[46] *Id*. at 347.
[47] *Id*. at 415.
[48] *Id*. at 16-17.
[49] *Id*. at 346.
[50] *Id*. at 22.
[51] *Id.*
[52] *Id*. at 25.

considered by the state agency reviewers who also could not have reviewed the record of the pain treatments of injections and medications in this case.

## **Conclusion**

In sum, I recommend finding, for the reasons stated, that substantial evidence does not support the decision of the Commissioner. Thus, I further recommend that the Commissioner's decision be reversed and the matter be remanded for further proceedings.

IT IS SO RECOMMENDED.

Dated: November 26, 2019                    s/William H. Baughman Jr
                                            United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[53]

---

[53] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh g denied*, 474 U.S. 1111 (1986).